# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) **Crim. No. 08cr10384-NG** |
| | ) |
| **JUAN PENA-ROSARIO and CLARVEE GOMEZ,** | ) |
| **Defendants.** | ) |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: MOTION TO SUPPRESS
### November 16, 2009

## I.      INTRODUCTION

Juan Pena-Rosario ("Pena-Rosario") and Clarvee Gomez ("Gomez") both seek to suppress the evidence found on them at the time of their arrests.  The indictment in this case charges Pena-Rosario and Gomez with conspiracy to possess at least 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 846.  The indictment also charges Pena-Rosario with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  Both argue that the police lacked probable cause for their arrests.  For the reasons described below, the Court disagrees.  Accordingly, Pena-Rosario's Motion to Suppress (document #45) and Gomez's Motion to Suppress (document #32) are **DENIED**.

## II.      FACTUAL BACKGROUND

As part of a two-year long investigation targeting cocaine trafficking in the Lawrence, Massachusetts, area, the Drug Enforcement Agency ("DEA") identified Gomez and Pena-Rosario as suspected cocaine traffickers.  Affidavit of Special Agent Glen Coletti ¶ 10 (document #1-2) ("Coletti Affidavit").  In October 2008, the government obtained court-authorized wiretaps on two of Pena-Rosario's cell phones.

On the evening of December 11, 2008, DEA agents intercepted telephone conversations that the government alleges indicated that Pena-Rosario planned to purchase a kilogram of cocaine from one party and then sell it to another. At approximately 5:59 p.m., the agents intercepted a call between Pena-Rosario and a man the government asserts was Gomez.[1] Joint Stipulation of Additional Facts ¶ 1 (document #52) ("Joint Stipulation"). Pena-Rosario arranged to meet with the man and said, "Be ready because we're going to eat." Id. at ¶ 11. The government alleges that drug dealers often use the term "eat" as code for engaging in a drug transaction. Id. At approximately 8:32 p.m., Pena-Rosario spoke with an unidentified man whom the government asserts was the purchaser of the cocaine. The man asked that Pena-Rosario obtain the "girl" as soon as possible. Id. ¶ 14. Supposedly, "girl" is code for a kilogram of cocaine. Id. ¶ 12. Approximately twenty minutes after talking to the unidentified man, Pena-Rosario again spoke with the person using Gomez's phone and asked him where they were going to "eat." Id. ¶ 15. He told Pena-Rosario to meet him at the "karate school" on 620 Essex Street in Lawrence, Massachusetts. Id.

Based on these intercepted calls, agents began following Pena-Rosario's car and set up surveillance at 620 Essex Street. Id. at ¶ 16. 620 Essex Street is a four-story office building containing several businesses, including a karate studio on the third floor. Joint Stipulation ¶ 4. According to the government, at approximately 9:10 p.m., agents observed a gray Dodge vehicle arrive at 620 Essex Street. Coletti Affidavit ¶ 16. An unknown man exited the car and entered the building. Soon after, at about 9:15 p.m., agents observed Pena-Rosario arrive at 620 Essex

---

[1] The phone number matched that of the cell phone seized from Gomez during his arrest, though the voice was never identified as that of Gomez. Since, however, the agents did not link the cell phone to Gomez until *after* the arrest, it cannot form the basis for probable cause.

Street, meet with an unknown individual at the building's doorway, and then enter the building and begin walking up a flight of stairs.  Id.  Pena-Rosario left the building a few minutes later and drove away in his car.  Id. ¶ 17.  Soon after Pena-Rosario left, three individuals exited 620 Essex Street, entered the gray Dodge, and drove away.  Id.  According to the government, the agents, relying on the intercepted phone calls, determined that Pena-Rosario and the men had completed the deal for one kilogram of cocaine while inside.  Id.

Agents followed Pena-Rosario as he drove to his residence.  Id. ¶ 18.  Once Pena-Rosario parked his car, agents approached and placed him under arrest.  Id.  They then searched him and found what was later determined to be a kilogram of cocaine in the waistband of his pants.  Id.  They also seized a cell phone that had the same number as the phone that had been used earlier in the evening to call Gomez's cell phone.  Id.  At approximately the same time, another team of agents stopped the Dodge car that had been driven away from 620 Essex Street and placed its occupants, including Gomez, under arrest.  Id. ¶ 19.  In their search incident to Gomez's arrest, agents seized a cell phone that had the same number as the phone that had previously been used to arrange the cocaine transaction with Pena-Rosario.  Id.

III.   **ANALYSIS**

A.   <u>**Legal Requirements for a Warrantless Arrest**</u>

The Fourth Amendment permits warrantless arrests as long as they are supported by probable cause.  See, e.g., <u>United States v. Watson</u>, 423 U.S. 411 (1976).  Probable cause exists when "the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense."  <u>United States v. Maguire</u>,

918 F.2d 254, 258 (1st Cir. 1990) (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st

Cir. 1987)).

**B.     Pena-Rosario**

Pena-Rosario seeks to suppress the cocaine and any other items found on him at the time

of his arrest.  He argues that the DEA agents lacked probable cause to arrest him and that

therefore, the subsequent search was unlawful and the cocaine must be suppressed.

While the DEA agents did not have an arrest warrant, they did have probable cause to

arrest Pena-Rosario.  At the time that the agents stopped and searched Pena-Rosario, they had

reasonably trustworthy information that Pena-Rosario had purchased a kilogram of cocaine from

Gomez at 620 Essex Street.  The agents had intercepted coded phone conversations indicating

that Pena-Rosario would engage in a drug transaction and that it would take place at 620 Essex

Street.  They surveilled that location and witnessed Pena-Rosario arrive shortly after his phone

conversation, meet with a man, enter the building, and leave a few minutes later.  This took place

after business hours.  These facts provided the agents sufficient grounds to believe that Pena-

Rosario had committed a criminal offense.  As a result, the agents had probable cause to arrest

Pena-Rosario, and the search following his arrest was constitutionally permissible as a search

incident to a lawful arrest. See United States v. Robinson, 414 U.S. 218, 236 (1973).

**C.     Gomez**

Gomez seeks to suppress the cell phone found on him at the time of his arrest.  He argues

that the DEA agents lacked probable cause to arrest him and that therefore, the subsequent

search was unlawful and the cell phone must be suppressed.

The DEA agents did not have an arrest warrant, but they had probable cause to arrest Gomez.  At the time that the agents stopped, searched, and arrested Gomez, they did not know that he was the person to whom Pena-Rosario had spoken earlier in the evening about conducting a drug transaction at 620 Essex Street.  The agents learned this information only after they seized Gomez's cell phone and matched it to the telephone number they had previously intercepted, so it cannot form the basis for probable cause.  Despite this, the agents did have sufficient information to give them probable cause to arrest Gomez.  Based on the intercepted coded phone conversations, they reasonably believed that Pena-Rosario planned to meet a group of individuals at 620 Essex Street and purchase cocaine from them.  Gomez was an occupant of a car that arrived at 620 Essex Street shortly before Pena-Rosario arrived and had left shortly after Pena-Rosario had exited the building.  This meeting occurred at approximately 9:15 p.m., a time when one would expect the four-story office building to be empty.  Although these facts did not definitively prove that Gomez was involved in criminal activity, they provided the agents sufficient grounds to believe that Gomez had committed a criminal offense.  As a result, the agents had probable cause to arrest Gomez, and the search following his arrest was constitutionally permissible as a search incident to a lawful arrest.  See United States v. Robinson, 414 U.S. 218, 236 (1973).

## IV.    CONCLUSION

For the foregoing reasons, both Pena-Rosario and Gomez's Motions to Suppress (document # 45 and document #32) are **DENIED.**

**SO ORDERED.**

Date:  November 16, 2009        /s/ Nancy Gertner
                                **NANCY GERTNER, U.S.D.C.**